UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY BIXBY and BARRY BIXBY AUTOMOTIVE, LLC d/b/a EUROPEAN MOTOR CARS, ) ) ) ) | |
| Plaintiffs, ) ) | |
| ) | CIVIL ACTION |
| v.   ) | NO. 23-10334-JGD |
| ) | |
| ANTHONY A. OLIVEIRA, et al., ) ) | |
| Defendant. ) | |

# MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

August 7, 2024

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises from the plaintiffs' ongoing, unsuccessful efforts to obtain a Class II automobile dealer license from the Town of Rehoboth, Massachusetts pursuant to Mass. Gen. Laws ch. 140, § 58. On February 14, 2023, plaintiff Barry Bixby ("Bixby"), a resident of Portsmouth, Rhode Island, and plaintiff Barry Bixby Automotive LLC d/b/a European Motor Cars, a Massachusetts corporation which Bixby owns (collectively, the "Plaintiffs"), filed this suit, asserting federal and state law claims against Anthony A. Oliveira ("Oliveira")[1] among others. By Memorandum of Decision and Order dated March 22, 2024 ("MTD Order") (Docket No. 62), this

---

[1] In his motions to dismiss, Oliveira states that his first name is "Antonio"—not "Anthony"—but nevertheless acknowledges that this action "is directed at him." (See Docket No. 25 at 1 n.1; Docket No. 27 at 1 n.1).

court allowed "Defendant, Anthony A. Oliveira's Special Motion to Dismiss brought pursuant to the Massachusetts Anti-SLAPP Statute, M.G.L. ch. 231, § 59H" (the "anti-SLAPP Motion to Dismiss") (Docket No. 25) with prejudice, and denied as moot "Defendant, Anthony A. Oliveira's Partial Motion to Dismiss brought pursuant to Rule 12(b)(6) of the Rules of Civil Procedure" ("12(b)(6) Motion to Dismiss") (Docket No. 27).[2]

This matter is before the court on Oliveira's "Motion for Awards of Attorney Fees Pursuant to M.G.L. ch. 231, § 59H (Anti-SLAPP Statute) and Costs Pursuant Thereto and Pursuant to Rule 54 of the Federal Rules of Civil Procedure and for Entry of Separate and Final Judgment Pursuant to Rule 54(b)" (the "Motion") (Docket No. 66). The Plaintiffs have opposed the request for attorney fees. ("Opp.") (Docket No. 77). The request for entry of separate judgment is addressed in a separate decision.

In Oliveira's original Motion he was seeking $20,192.22 in attorney and paralegal fees and costs, plus additional attorney and paralegal fees he expected to incur in preparing the fee petition, which he estimated would be between $1,575.00 and $2,250.00. (Docket No. 66). However, the court determined that the original Motion was insufficient in that it did not itemize the time spent on the work done, failed to identify the experience of the paralegal, and failed to provide information that the charged rates (attorney and paralegal) were in line with the prevailing rates in the community. In lieu of rejecting the fee request, the court gave Oliveira the opportunity to supplement the record. (Docket No. 79). He did so (see Docket Nos.

---

[2] In the same Memorandum of Decision and Order the court allowed the remaining Municipal Defendants' Motion to Dismiss without prejudice.

80-1, 80-2) and is now requesting $25,627.22 in fees and costs, including fees for preparation of the fee petition. (Docket No. 80).

For the reasons detailed herein, the Motion is allowed in part and denied in part. The court awards Oliveira the following amounts in fees and costs:

| | |
|---|---|
| Attorney's Fees | 43.6 hours x $350/hour = $15,260.00 |
| Paralegal Fees | 11.5 hours x $150/hour = $ 1,725.00 |
| Costs | $    269.72 |
| Total | $17,254.72 |

## II. BACKGROUND

The details of this dispute can be found in the court's MTD Order (Docket No. 62) and will not be repeated here. The following limited discussion is sufficient for present purposes, and is based on the allegations of the Complaint ("Compl.") (Docket No. 1).

Bixby and Oliveira are former business partners who had a falling out. (See Compl. ¶¶ 17, 30). On or around August 18, 2021, the Plaintiffs filed an "Application for a Class II Auto License to Buy, Sell, Exchange or Assemble Second Hand Motor Vehicles or Parts Thereof" (the "Application") with the Town of Rehoboth. (Id. at ¶ 14). The proposed location for the new automotive dealership abutted Oliveira's existing business. (Id. ¶¶ 15, 17). A public hearing was held on October 18, 2021 before the Rehoboth Board of Selectmen, the Town's licensing authority. (Id. ¶¶ 6, 16). While the parties disagree as to the characterization of the statements made by Oliveira, and his intent, it is undisputed that Oliveira voiced his opposition to the Application and called into question some business transactions in which Bixby had allegedly engaged, including allegations relating to the sale of two automobiles Bixby had made in 2017 while in Oliveira's employ. (Id. ¶¶ 18-19). As a result of Oliveira's statements, the Board requested that Rehoboth Police initiate an investigation, and the hearing was continued. (Id. ¶

[3]

21). At a continued hearing on November 1, 2021, an officer of Rehoboth Police reported that "nothing illegal had occurred" and that the dispute was "essentially a business issue." (Id. ¶¶ 24, 28-29). Nevertheless, the Application was denied. (Id. ¶ 36). It has consistently been Bixby's position that Oliveira cannot prove his allegations, and that they are false. (See id. ¶¶ 41-43, 60).

Bixby filed an appeal of the Board's adverse decision with the Massachusetts Superior Court pursuant to Mass. Gen. Laws ch. 140, § 59 on November 10, 2021. (Id. ¶ 39). In August 2022 the parties agreed to stay the litigation and hold a remand hearing on the Application before the Board. (Id. ¶¶ 48-49). Although subsequent hearings were held, the dispute remained unresolved. (Id. ¶¶ 51-53, 68, 88-94). Bixby filed the instant litigation on February 14, 2023. In addition, the state court proceeding was reconvened.

A jury-waived trial was held on June 10, 2024 before Justice Daniel J. O'Shea of the Bristol County Superior Court, and the court issued its decision on June 24, 2024. (Opp. at 1-2). Bixby has submitted this decision to this court, and the court takes judicial notice of the ruling of another court. (Docket No. 77-1). Apparently, the trial judge believed that Bixby had information which challenged the accuracy of Oliveira's statements at the Board hearings. (See id. at 6-8). The case was "remanded to the Board to make a proper and legally tenable determination, after examination of the entire record and in reliance upon substantial evidence, whether or not to issue [Bixby] a Class II auto license." (Id. at 7-8). Bixby is to be given the opportunity to present addition relevant information for the Board's consideration. (Id. at 8).

Contrary to Bixby's contention, the outcome of the state court proceeding does not call into question the merits of this court's ruling on the anti-SLAPP Motion to Dismiss. (See Opp. at

[4]

2 -- except for time restraints, this matter would be "ripe for reconsideration based upon evidence presented in the state court trial"). If anything, it supports the conclusion that participants in public hearings should be free to express their views, while the merits of a Board's decision should be decided by following statutory procedures for appeals. Mass. Gen. Laws ch. 231, § 59H was enacted "to counteract 'SLAPP' suits, defined broadly as 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 147, 75 N.E.3d 21, 29 (2017) ("Blanchard I") (quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161, 691 N.E.2d 935, 939 (1998)). "The main 'objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech.'" Id. (quoting Duracraft, 427 Mass. at 161, 691 N.E.2d at 940). Here, the merits of the parties' dispute were appropriately litigated in state court. The record still supports the conclusion that the federal suit was brought to chill Oliveira's "rights of petitioning and speech."

"There is a two-step burden-shifting procedure for special motions to dismiss pursuant to c. 231, § 59H." Bearce v. Morton Hosp., No. 22-cv-10708-DJC, 2022 WL 17823768, at *2 (D. Mass. Dec. 20, 2022). At the initial stage, the proponent of the motion to dismiss must "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Bristol Asphalt, Co., Inc. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 555, 227 N.E.3d 1019, 1037 (2024) (quoting Duracraft, 427 Mass. at 167-68, 691 N.E.2d at 943). Here there is no question that the claims asserted against Oliveira are "based on" his own testimony — the petitioning activities — before various Board hearings, and that

they have "no substantial basis in conduct other than or in addition to" his petitioning activities. Id. at 555-56, 227 N.E.3d at 1037.

Under the second stage, the Plaintiffs must establish by a preponderance of the evidence that Oliveira's petitioning activities were "devoid of any reasonable factual support or any arguable basis in law" and "caused actual injury" to the Plaintiffs. Id. at 557, 227 N.E.3d at 1038 (quoting M.G.L. ch. 231, § 59H). This is a "high bar." Blanchard I, 477 Mass. at 156 n.20, 75 N.E.3d at 35-36 n.20. As detailed fully in this court's MTD Order, Oliveira provided sufficient facts and explanations to establish that he was expressing his reasonable belief and opinion that the Plaintiffs were unfit to hold a Class II license. (MTD Order at 17-18). There is no requirement that those making statements at a hearing be right -- Oliveira was entitled to speak publicly without being sued for it. "[T]he evidentiary support in favor of the special motion proponent's petitioning activity must be quite limited in order for a special motion opponent to satisfy the 'devoid of any reasonable factual support' standard. The legal basis for a special motion proponent's petitioning activity likewise need only be 'arguable.'" Bristol, 493 Mass. at 558, 227 N.E.3d at 1039 (quoting M.G.L. ch. 231, § 59H).

Nevertheless, in setting the appropriate fee, the court has considered the fact that Oliveira did not fully investigate the facts or bring evidence to the Board before expressing his opinion about Bixby. Bixby then had to respond to charges which had not been fully vetted. In this court's view, this is not a case where the Plaintiffs should be punished by being charged a higher rate than Oliveira himself paid.

## III. ANALYSIS

The award of costs and reasonable attorney's fees are mandatory under the anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H.  See MacDonald v. Paton, 57 Mass. App. Ct. 290, 296, 782 N.E.2d 1089, 1094 (2003) (and cases cited).  In setting such reasonable fees in anti-SLAPP cases, courts generally apply the "lodestar" approach.  See Source One Fin. Corp. v. Occidental Fire & Cas. Co. of N. Carolina, No. 2084CV2712BLS2, 2021 WL 5626236, at *2 (Mass. Super. Sept. 29, 2021) (and cases cited); Crotty v. Continuum Energy Technologies, LLC, No. 1984CV03971BLS2, 2020 WL 8182912, at *1 (Mass. Super. Oct. 27, 2020).  The lodestar method is applied as follows:

> The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.  *Torres–Rivera,* 524 F.3d at 336 (*citing Hensley,* 461 U.S. at 433, 103 S.Ct. 1933).  In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case, *id.*, and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims.  *Lipsett v. Blanco,* 975 F.2d 934, 940–41 (1st Cir.1992).  Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter.  *Torres–Rivera,* 524 F.3d at 336.

De Jesús Nazario v. Morris Rodríguez, 554 F.3d 196, 207 (1st Cir. 2009).  The "reasonable hourly rate" "is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience and competence."  Pérez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022) (internal quotations and citation omitted).   Finally, "[t]he lodestar method, properly applied, 'yields a fee that is presumptively sufficient to achieve' the underlying purposes of fee-shifting."  Id. (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010)).  The court's task "is to do rough justice, not to achieve auditing perfection[,]" and a judge "may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time." Id. at 322 (quoting Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011)).

### Hours Expended

In his supplemental filing, Oliveira's counsel, Eric Brainsky, submitted the client ledger detailing the work performed and time expended on each task. (Docket No. 80-2). He has also submitted a supplemental affidavit explaining the work performed and the amounts being sought. ("Supp. Brainsky Aff.") (Docket No. 80-1). As detailed therein, Mr. Brainsky was the only attorney who worked on this matter, and there was apparently one paralegal, Jennifer Andrews. (Supp. Brainsky Aff. ¶ 7). Counsel expended 38.3 hours in the underlying litigation, and the paralegal expended 10 hours in connection with the underlying litigation. (Id.).[3] After careful review, this court finds the time expended on the underlying litigation to be reasonable. In addition, the court will not exclude work done on the Rule 12(b)(6) Motion to Dismiss, as it was interrelated to the anti-SLAPP Motion to Dismiss. See Crotty, 2020 WL 8182912, at *2-3 (since "the Rule 12(b)(6) arguments were all directly relevant to Crotty's request for dismissal under the anti-SLAPP statute" award of attorney's fees includes work done on the 12(b)(6) arguments).

It is undisputed that Oliveira is entitled to recover fees and expenses in connection with the preparation of the fee petition: the exclusion of such time "would dilute the value of the award, and so frustrate the purpose of the act authorizing fees." Stratos v. Dep't of Pub.

---

[3] In his original fee application, Attorney Briansky submitted an affidavit in which he reported that he had done 38.1 hours of work on the underlying case, and multiple paralegals had done 11 hours of work. (Affidavit of Eric S. Brainsky, Esq. ("Brainsky Aff.") (Docket No. 67-1) ¶¶ 9-11). There is no explanation for these differences, and they are not significant. The court will rely on the supplemental pleadings, as the calculations therein are based on actual time records.

Welfare, 387 Mass. 312, 325, 439 N.E.2d 778, 787 (1982).  The court, however, finds the request for fees in connection with the fee application to be excessive.  Attorney Brainsky is seeking compensation for 12.3 hours of his time plus 1.5 hours of paralegal time.  (Supp. Brainsky Aff. ¶ 8).  Thus, counsel spent approximately 1/3 as much time in connection with the fee petition as he did in preparing the entire underlying case.  There is no explanation as to why more work was not done by the paralegals.  Moreover, while this court recognizes that it asked for supplemental information, it did so because the original filings lacked the basic information needed to support any fee petition, and much of the information eventually provided consisted of printed time records which were presumably readily available.  The request for fees in connection with the fee petition itself must be reduced.  See Source One Fin. Corp., 2021 WL 5626236, at *5-6 (court reduced fee request from $9,117.62 to $5,000 even though it had instructed the parties to meet and confer (thereby incurring time), where amount originally sought was 26% of the total claimed for the underlying work and preparation of fee petition was done by senior counsel).

In the original application Attorney Brainsky estimated that his work in connection with the fee petition, including arguing the motion for fees, if necessary, would take 3-4 hours, and that paralegals would put in 1-2 hours of work.  (Brainsky Aff. ¶¶ 9, 11).  There will be no oral argument needed.  However, the court recognizes that counsel may have underestimated the amount of time it would take to finalize the fee petition and obtain the information needed to meet his burden of proving that his request was reasonable.  See Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 n.11 (1st Cir. 1991) ("In applying for judicial approval of a fee award, it is the [movant's] burden to furnish the evidence required, not the court's burden to

seek it out."). Based on the court's experience, the fact that the petition itself is not complicated, the fact that work could have been done at a lower rate by paralegals, and considering the amount of time spent on the underlying litigation, the court will deduct 7 hours from Mr. Brainsky's request, allowing 5.3 hours of attorney time, and award the full 1.5 hours of paralegal time requested.[4]

### **Hourly Rates**

In the Motion, Mr. Brainsky is seeking to recover at the rate of $450/hour for his time, and $225/hour for paralegal work. (Supp. Brainsky Aff. ¶ 5). He has 18 years of experience and has been a partner in his law firm for approximately 11 years. (Brainsky Aff. ¶¶ 1-2). He describes these rates as being "[t]he Firm's typical rates for a case of this nature" using a senior lawyer and paralegals. (Supp. Brainsky Aff. ¶ 5). No description of the paralegal's credentials or experience has been provided.

To support a claimed hourly rate, a party must "produce satisfactory evidence that the rates 'are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Soc'y of Jesus of New England v. Boston Landmarks Comm'n, 411 Mass. 754, 759 n.11, 585 N.E.2d 326, 329-30 n.11 (1992), (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984)). In response to this court's request for supplementation, Oliveira submitted the Affidavit of Joseph C. Ferreira, Esq., an attorney for over 30 years who was a former Chief of Police of Somerset, Massachusetts. (Ferreira Aff. (Docket No. 80-3) ¶¶ 1-2). It appears from his

---

[4] The court notes that 5.3 hours is approximately 14% of the amount of lawyer time spent on the underlying litigation, which in this court's view is sufficient under the circumstances.

[10]

affidavit that Mr. Ferreira's expertise is similar to Mr. Brainsky's, and they have worked together both as co-counsel and as counsel to other parties in many cases.  (Id. ¶¶ 3, 6).  Mr. Ferreira opined that the requested rates of $450/hour for Mr. Brainsky and $225/hour for paralegals

> are reflective of the fair market value of attorney (and paralegal) hourly rates for business/commercial litigators practicing in Massachusetts on cases similar to this case, particularly for cases brought in Federal Court.  In my opinion, were Mr. Oliveira to have hired a business litigator with Attorney Brainsky's experience and reputation located in Boston, the aforesaid rates would likely be significantly higher, even potentially doubled.

(Id. ¶ 11).  Mr. Ferreira attested that "[o]ver the last 15 years my average hourly client rate is far in excess of Five Hundred ($500/hr.) Dollars per hour."  (Id. ¶ 10).  He offers no explanation as to why he believes the paralegal hourly rate is reasonable.

### Attorney Rate

This court's independent case-law research indicates that while $450/hour is high, it is not far outside the range of what could be considered reasonable in comparable circumstances. See, e.g., Kuzma v. Rollins, No. 18 MISC 000275 (HPS), 2024 WL 3175816, at *2 (Mass. Land Ct. June 26, 2024) (in "frivolous" land court dispute in which plaintiff "took a scorched earth approach to every issue," "court credits that an hourly rate of $400.00 per hour by an extremely experienced sole practitioner in Barnstable County for the type of services provided in this case is fair and reasonable"); Trindade v. Grove Servs., Inc., No. 19-cv-10717-ADB, 2023 WL 6444259, at *5 (D. Mass. Oct. 3, 2023) (in wage and hour case, rate of $350/hour found "reasonable" for attorney who practices in a small firm and has 12 years' experience; $450/hour found "supportable" for an attorney who works at a small firm and has 27 years' experience); Neal v. City of Boston, No. 16-2848-H, 2022 WL 303492, at *7 (Mass. Super. Jan. 18, 2022) (in employment discrimination case, $400/hour "is fair and reasonable" for an attorney with

[11]

approximately 10 years of experience who started his own, small firm). The cases acknowledge that attorneys in large firms, and those in Boston, charge higher rates. E.g., id.; Kuzma, 2024 WL 3175816, at *2 n.2.

Assessing the appropriate attorney rate in this case, however, is complicated by several factors. As an initial matter, all the legal work was done by the senior partner. While this may have resulted in efficiencies of work, it means that no work was done at lower, associate, rates. Thus, top dollar is being paid for work which could have been done less expensively.

Of more importance in the instant case is the fact that Oliveira was only charged the Firm's "preferred customer hourly rate" of $350/hour for Mr. Brainsky and $200/hour for paralegal work. (Supp. Brainsky Aff. ¶ 5). This does not appear to be a rate charged uniquely to Oliveira, but is a rate for clients with whom the firm has a special relationship. "Although a prevailing party's fees are not necessarily limited by a preexisting agreement between lawyer and client, such an agreement is some evidence of the prevailing market rate for the lawyer's services." United States v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named "Flash II", 546 F.3d 26, 41 (1st Cir. 2008) (citing Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S. Ct. 939, 944, 103 L. Ed. 2d 67 (1989); Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 723, 107 S. Ct. 3078, 3085-86, 97 L. Ed. 2d 585 (1987)).

Where, as here, "the rate agreed to between the prevailing party and his attorney is within the universe of reasonable rates, a district court does not abuse its discretion by taking the agreed rate into account in its fee-determination calculus." Id. "While the court understands that any agreed-upon rate or the existence of some contingency-based arrangement is not dispositive," Adams v. Gissell, No. 20-11366-PBS, 2022 WL 14772785, at *2

(D. Mass. Oct. 26, 2022) it is particularly appropriate to use the hourly rate Mr. Brainsky charged Oliveira in the instant case – a rate that is "within the universe of reasonable rates."

The fee-shifting provisions of the anti-SLAPP litigation furthers the important goal of supporting individuals' "rights of petitioning and speech." Blanchard I, 477 Mass. at 147, 75 N.E.3d at 29 (quotations and citation omitted). In the instant case, as described above, Oliveira should have been able to express his views without threat of litigation. On the other hand, Bixby apparently had to defend against claims that were not fully investigated before they were publicly made. Bixby has had to hire (and presumably pay) his own lawyer through the federal and state litigation. This case seems to involve two small businessmen, not corporate giants.

In this court's exercise of discretion, and to further the goals of the fee-shifting statute, this court will reduce Mr. Brainsky's recoverable hourly rate to $350/hour, which this court finds to be a reasonable market rate. Counsel should be fairly compensated for bringing the anti-SLAPP Motion to Dismiss and for ensuring his client's ability to exercise his rights, but it is not appropriate to provide a windfall for either Oliveira or his attorney, or to further punish the Plaintiffs, under the facts presented here. "The fee quoted to the client . . . is helpful in demonstrating attorney's fee expectations when [counsel] accepted the case." Bergeron, 489 U.S. at 93, 109 S. Ct. at 944 (internal quotations and citation omitted).

In addition, Mr. Brainsky deducted $2,570.00 from Oliveira's bills as a "courtesy client discount." (Supp. Briansky Aff. ¶ 6). No further description of why these specific amounts were deducted has been provided, although in the Supplemental Memorandum of Law counsel represents that these discounts were "to further help [Oliveira] with his financial circumstances[.]" (Docket No. 80 at 3). These specific, one-time, adjustments are not the type

of adjustments that factor into the calculation of the appropriate market rate. Moreover, counsel should not be penalized for helping out a long-standing client and friend. Consequently, the court will not deduct the $2,570.00 which was written off by the Firm to help Oliveira personally.

Paralegal Rate

Oliveira has provided virtually no support for the request of paralegal fees of $225/hour, or even for the $200/hour actually charged to Oliveira. Despite the court's request for supplementation, Mr. Brainsky did not provide any information about the paralegal's experience or credentials. Mr. Ferreira provided no support for his conclusion that the rates were reasonable. A review of time records provided establishes that while the paralegal did some substantive work such as drafting a motion for an extension, most of the paralegal work is described as "scan and efile" various documents. (See, e.g., Docket No. 80-2 at 4/24/2023; 5/25/2023; 6/14/2023; 7/14/2023; 5/6/2024). While the court recognizes that only 11.5 hours are involved, the court cannot find a rate of $200 or $225/hour, without any support, to be reasonable.

"Although rates for paralegals in this District vary, in recent years the median rate has remained in the ballpark of $95 to $125 per hour." K.D. v. Harvard Pilgrim Health Care, Inc., 664 F. Supp. 3d 168, 177 (D. Mass. 2023) (and cases cited). Admittedly, there are some specialized cases where the rates are higher. Id. (citing to $220 per hour in a Medicaid Act matter and $140 per hour for paralegal in False Claims Act matter with more than 30 years of experience). Nevertheless, here Oliveira "has supplied little justificatory information, making quite challenging the task of drawing comparisons between reasonable rates in District of

Massachusetts case law[.]"  Id. (court allows $110/hour for paralegal work due to the limited information provided).

The court will assume that some of the work done by the paralegal would have been done by an associate if the case had been staffed differently.  The court also recognizes that Oliveira was billed at the rate of $200/hour for paralegal time.  Based on the information before the court, the court will in its discretion allow $150/hour for paralegal time.  See Cosenza v. City of Worcester, Mass., No. 4:18-10936-TSH, 2023 WL 2838381, at *2 (D. Mass. Apr. 7, 2023) (court allows $150/hour for senior paralegal and $100/hour for other paralegals).

## Costs

Oliveira is seeking $269.72 in costs.  (Brainsky Aff. ¶ 14).  The court has reviewed these costs and finds them to be reasonable.

## IV.  AWARD OF ATTORNEY'S FEES AND COSTS

Oliveira's Motion (Docket No. 66) is allowed in part and denied in part.  The court awards Oliveira $16,985.00 in fees and $269.72 in costs for a total of $17,254.72.  Plaintiffs are jointly and severally liable for these amounts.

                               / s / Judith Gail Dein  
                               Judith Gail Dein  
                               United States Magistrate Judge